U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - ALEXANDRIA

FEB 27 2009

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| CHESTER MATTHEWS<br>D.O.C. #383196 | DOCKET NO. 08-cv-0921; SEC. P |
| VERSUS | JUDGE DEE D. DRELL |
| CORRECTIONS CORPORATION OF<br>AMERICA, ET AL. | MAGISTRATE JUDGE JAMES D. KIRK |

## REPORT AND RECOMMENDATION

Before the court is a civil rights complaint (42 U.S.C. §1983) filed by Plaintiff **Chester Matthews (DOC#383196)**, pro se and in forma pauperis, on June 24, 2008. Plaintiff was ordered to amend his complaint, and he filed an amended complaint on December 24, 2009. [Doc. #9] Plaintiff is an inmate in the custody of the Louisiana Department of Public Safety and Corrections (LDOC) and is housed at Winn Correctional Center (WCC) in Winnfield, Louisiana. In Plaintiff's original complaint, *which is an identical copy of the complaint filed by Inmate Michael Sampson in docket number 08-CV-915*, Plaintiff sought only injunctive and declaratory relief on a class-wide basis.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.

### FACT AND BACKGROUND

Mathhtews is the only named Plaintiff in the instant lawsuit,

but seven other WCC inmates contemporaneously filed **identical complaints** in this District Court.[1] The inmates seek class certification. In his amended complaint, Plaintiff named new defendants in addition to those names in the original complaint. The original defendants were: Corrections Corporation of America (CCA), Warden Tim Wilkinson, Deputy Warden Tim Morgan, Deputy Warden Angel A. Martin, Chief of Security Virgil Lucas, Governor Bobby Jindal, and LDOC Secretary James LeBlanc. The defendants Plaintiff added in the amended complaint include: John Ferguson, Alphonso Pacheco, Pat Thomas, J. Hamlion, Cheryl Wiley, Mona Heyse, Linda Steele, Officer Bailey, Officer Booker, Sergeant Powell, Nurse A. Woods, Nurse Mary Fobbs, Nurse Foster, Sergeant K. Jordan, Tommy Glover, Chris Coleman, Harvey Carroll, Gary Langly, Diane Hutzler, Devin Flowers, Mildred Melton, Dr. Eckhart, Nurse Missy Gaskill, Kathy Richardson, Mr. Lewis, Michelle Kennedy, Dr. Wheat, and Randy Oloff.

In the original complaint, it is alleged that the general constitutional rights of WCC inmates were violated by the defendants. The complaint states more specifically that Plaintiff was personally subjected to the defendants' failure to protect him from harm, verbal abuse, inadequate medical and mental health care, inadequate administrative remedy process, inadequate access to the

---

[1] Each Plaintiff simply handwrote his own name and docket number in the typed caption and signature blocks.

courts, tampering with legal mail, inadequate food, lack of programming, unsanitary conditions, lack of security and control, and overcrowding.

Because Plaintiff filed an exact duplicate of Inmate Sampson's complaint, which provided only conclusory allegations, the Court ordered Plaintiff to amend the complaint and allege facts to support the conclusion that **his** constitutional rights were violated by each named defendant. The undersigned explained exactly what factual information Plaintiff needed to provide in the amended complaint. [Doc. #8] Matthews filed a handwritten amended complaint presenting some new factual allegations, addressed below.

## LAW AND ANALYSIS

As to the general averments of the complaint regarding the conditions of his confinement, Plaintiff does not allege, nor does he provide documents that would indicate that *he* was ever subjected to the following, as alleged in the original complaint: the use of chemicals such as tear gas and pepper spray to punish or threaten; the use of four and five point hand restraints without cause and without proper monitoring; the practice of "kicking out;" having a hit placed on him by a guard; abusive and arbitrary disciplinary practices that are painful and demeaning; placement in isolation for arbitrary reasons and not properly monitored; exposure to unreasonable risks of harm by other inmates; univestigated complaints of abuse by guards; thwarted efforts at contacting PZT

3

(project zero tolerance); denial of vision, hearing, dental, or substance abuse treatment; and insufficient clothing, shoes, linens.

Plaintiff did amend his complaint and made some specific allegations that he was personally deprived of certain rights, as enumerated below.

1. Access to Courts

Matthews claims that he has been denied access to the courts. The right of access to the courts assures that no prisoner will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights. See Lewis v. Casey, 518 U.S. 343 (1996); Norton v. Dimazana, 122 F.3d 286, 289 (5th Cir. 1997). The Supreme Court has not extended the right to access the courts to encompass any more than the ability of an inmate to prepare and transmit a necessary legal document to a court. Brewer v. Wilkinson, 3 F.3d 816, 821 (5th Cir. 1993), cert. denied, 510 U.S. 1123 (1994). Moreover, "an inmate alleging denial of access to the courts must demonstrate an actual injury stemming from the defendants' unconstitutional conduct." Chriceol v. Phillips, 169 F.3d 313, 317 (5th Cir. 1999).

First, Plaintiff claims that:

- On 12/11/08, Warden Wilkinson would not open the law library because of a security staff shortage.

- On 12/18/08, Warden Wilkinson issued a memo concerning legal copies stating that on 12/19, copying would only be allowed until 3:30 p.m.; on 12/22 and 12/23, copying

4

> would be allowed until 7:30 p.m.; from 12/23 - 12/30, 2008, no copies could be made at the library; on 12/30 and 12/31, legal copies could only be made until 3:30 p.m. and 7:30 p.m., respectively. The notice stated that no notary service would be available during those times.

While he alleges that the law library was closed on one occasion for security reasons, he does not allege that closure on that particular date made him unable to present to the judiciary allegations concerning violations of any fundamental constitutional right.

The warden's memo of 12/18/08 simply informed the inmates of the holiday schedule for the law library and copy machines. It is hardly unusual for offices in the "free world" to have limited hours, or close entirely, during the Christmas holidays. Plaintiff's claim that this was a policy enacted to hamper inmates' efforts to access the courts is entirely conclusory. Moreover, Plaintiff did not allege that the holiday schedule caused him to be unable to present to the judiciary allegations concerning violations of any fundamental constitutional right.

Elsewhere in the amended complaint, Plaintiff alleges that the defendants' interference with his access to the library caused him to lose case "by default." Plaintiff provides no information regarding this "case," no date of filing, and no case number. However, a review of court records shows that Plaintiff filed suit while housed at Winn Correctional on April 18, 2005 challenging a disciplinary conviction. Plaintiff filed a complaint, motion for

5

pauper status, motion to serve, motion for extension of time, and objection to the report and recommendation. [1:05-cv-0690] The case was dismissed under Heck v. Humphrey, 515 U.S. 477 (1997).[2] [1:05-cv-0690, Doc. #13] Plaintiff filed another suit in this district on July 21, 2005. [Matthews v. Stalder, Docket No. 1:05-cv-0693] That case was dismissed without prejudice on July 21, 2005 as Plaintiff had failed to exhaust pending state court remedies. [05-cv-0693, Doc. #10] Plaintiff has provided no facts to support a claim that a suit was dismissed "by default" due to his inability to access the law library.

Plaintiff's access to courts claim is frivolous; it is clear that he cannot establish a constitutional violation of access to the courts based on the facts and conclusions alleged.

2. Cruel and Unusual Punishment

Plaintiff claims that he was subjected to cruel and unusual punishment on June 18, 2008 by Officer Booker and her supervisor, Sergeant Powell. [Doc. #9, p.18] Plaintiff states that he requested a bathroom break because of a condition that prevents him from holding his urine and he had been out in the yard for three hours already and needed to urinate. He claims that Booker told

---

[2] Heck provides that a claim that attacks the constitutionality of a "conviction" does not accrue until that "conviction" has been reversed on appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. Id. at 486. Prison disciplinary convictions are "convictions" for purposes of Heck. See Edwards v. Balisok, 520 U.S. 641, 646-48(1997).

Plaintiff to "hold it" or to urinate in the yard. Plaintiff then asked Sgt. Powell to go to the bathroom, and the sergeant also denied his request. Plaintiff states that his rights were violated because the guards put him in a "Catch 22" situation of urinating on himself or in the yard, in front of other inmates, *which could expose him to harm or disciplinary sanctions.*

The Eighth Amendment's prohibition against cruel and unusual punishment requires that prisoners be afforded 'humane conditions of confinement.' <u>Herman v. Holiday</u>, 238 F.3d 660, 664 (5th Cir. 2001). However, the Constitution does not mandate comfortable prisons. <u>Woods v. Edwards</u>, 51 F.3d 577, 581 (5th Cir. 1995). A two-part test determines whether a prisoner has established a constitutional violation. See <u>Woods</u>, 51 F.3d at 581(citing <u>Helling v. McKinney</u>, 509 U.S. 25, 32-33 (1993). First, Plaintiff must demonstrate the objective component of conditions "so serious as to deprive prisoners of the minimal measure of life's necessities...." <u>Id.</u> Second, under a subjective standard, the prisoner must establish that the responsible prison officials acted with deliberate indifference to his conditions of confinement. To establish deliberate indifference, the inmate must show "that the defendant officials '(1) were aware of facts from which an inference of excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed.'" <u>Atkinson v. Johnson</u>, 74 Fed.

7

Appx. 365, 367 (5th Cir. 2003)(quoting Bradley v. Puckett, 157 F.3d 1022, 1025 (5th Cir. 1998)).

The length of time spent in the alleged offensive conditions should be taken into account. Hutto v. Finney, 437 U.S. 678, 686-87 (1978) ("[T]he length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards. A filthy, overcrowded cell ... might be tolerable for a few days and intolerably cruel for weeks or months."); Davis v. Scott, 157 F.3d 1003, 1006 (5th Cir. 1998)(finding no Eighth Amendment violation where inmate was kept in filthy cell for only three days and was given cleaning supplies). Here, Plaintiff alleges that he was not allowed to go indoors to the restroom after being outside for three house. He does *not* provide any facts regarding his alleged "medical condition" that prevents him from holding his urine. Moreover, he does not allege that he actually ended up urinating on himself *or* in the yard. Plaintiff does not allege that he suffered any physical injury resulting from the denial of a bathroom break. He does not claim that he suffered any harm by other inmates or guards, and does not allege that he received any disciplinary charges or sanctions. Also, Plaintiff does not allege that he was denied a bathroom break for any extended period of time. Plaintiff has simply failed to allege acts so serious as to deprive him of the minimal measure of life's necessities. Plaintiff has not alleged that injunctive relief is necessary in order "to prevent a

8

substantial risk of serious injury from ripening into actual harm." Farmer v. Brennan, 511 U.S. 825, 845 (1994). Nor has he alleged that he is entitled to monetary damages. His claim is frivolous.

3. Due Process

Plaintiff complains that Mona Heyse, Linda Steele, and Virgil Lucas violated his right to due process by not addressing his administrative remedy procedure (ARP) forms. He also states that the procedure used by defendants for receiving ARPs is unconstitutional because the forms are placed in an unsecured box. Plaintiff has not raised a constitutional claim. First, there is no constitutional right to have grievances addressed, investigated, or favorably resolved. See Geiger v. Jowers, 404 F.3d 371 (5th Cir. 2005). Furthermore, there is no procedural due process right inherent in such a claim. Id. Plaintiff's claim is frivolous.

4. Mental Health Care

Plaintiff was ordered to amend the original complaint and state the name(s) of those who refused him mental health care or provided inadequate care, the relevant dates, the circumstances surrounding the alleged refusal or substandard treatment, and any injury suffered as a result of the deprivation. Additionally, he was ordered to allege (1) deliberate indifference to (2) a serious medical need pursuant to Estelle v. Gamble, 429 U.S. 97, 104 (1976). [Doc. #8]

Plaintiff amended the complaint and wrote that he has been

9

receiving mental health treatment since 1997 for disorders such as PTSD, depression, bi-polar disorder, and anxiety, but was not receiving *adequate medications or counseling* at WCC. [Doc. #9, p.19] He alleges that "Dr. Wheat's practice of administering medications is to ask patients what they want for medications, then only prescribing what the WCC formulary authorizes." [Doc. #9, p.19] He complains that his "main ailment, among many," is a sleep disorder, and the most effective medication contains a narcotic, which Pat Thomas does not allow.

A *serious medical need* is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required. Gobert v. Caldwell, 463 F.3d 339, 345 (5th Cir. 2006), citing Hill v. Dekalb Regional Youth Detention Center, 40 F.3d 1176, 1187 (11th Cir. 1994)(*abrogated on other grounds by* Hope v. Pelzer, 536 U.S. 730 (2002)). A showing of deliberate indifference requires the prisoner to submit evidence that prison officials "'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" Easter v. Powell, 467 F.3d 459, 462 (5th Cir. 2006)(citation omitted).

Plaintiff disagrees with the medications prescribed and is unsatisfied with the treatment he is receiving. He does not alleged that the defendants have refused to treat him, ignored his

complains, or intentionally treated him incorrectly. Allegations that a defendant will not authorize narcotic treatment for a sleep disorder does not allege a constitutional violation, nor does the claim that Plaintiff is not receiving what he deems to be "adequate" medication or counseling. He clearly disagrees with the treatment prescribed by Dr. Wheat, and he does not allege any deliberate indifference on the part of that doctor. The decision whether to provide additional treatment or which medications to prescribe is a matter for medical judgment. See Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006). Plaintiff has not alleged that injunctive relief is necessary in order "to prevent a substantial risk of serious injury from ripening into actual harm," Farmer v. Brennan, 511 U.S. 825, 845 (1994), nor has he alleged that he is entitled to monetary damages. His claim is frivolous.

5. Retaliation

Plaintiff alleges that he has suffered harassment and disciplinary sanctions in retaliation for filing the instant suit. To state a valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." Rosas v. Rodriguez, 2006 WL 1877282, 1 (5th Cir. 2006)(citing Jones v. Greninger, 188 F.3d 322, 324-25 (5th Cir.1999)). **The inmate must allege more than his personal belief**

**that he is the victim of retaliation.** See Jones v. Greninger, 188 F.3d at 325. "The inmate must produce direct evidence of motivation or, the more probable scenario, 'allege a chronology of events from which retaliation may plausibly be inferred.' Id. (citing Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995).

Plaintiff states that, on July 9, 2008, he told Counselor Lewis that he was "in litigation" with defendants at WCC. Plaintiff alleges that Lewis then relayed that information to "management." [Doc. #9, p.19] Plaintiff claims that he was "rousted" by Officers Bailey and McManus and prosecuted in disciplinary court by Cpt. Taylor in retaliation for suing WCC management. [Doc. #9, p.19] This is a conclusory allegation. Plaintiff has not alleged events from which retaliation may plausibly be inferred. He claims that he was retaliated against for filing a suit that has not been served on the defendants. Additionally, the retaliating officers - Bailey, McManus, and Taylor - were not even named as defendants in the original complaint that Plaintiff had filed at the time. Plaintiff has not alleged or indicated any retaliatory motive on the part of Bailey, McManus or Taylor. Additionally, it is noted that, of the seven other inmates who filed complaints *identical* to Plaintiffs, none have claimed that they were written up in retaliation for filing suit. Plaintiff offers no reason why the staff at WCC would retaliate against him for filing suit, but not the five inmates who

12

filed before him or the two inmates who filed after him. Irrespective, Plaintiff has alleged nothing more than the personal belief that he is the victim of retaliation.

Elsewhere in the amended complaint, Plaintiff complains that his "therapeutic mattress" was confiscated in retaliation for filing suit. He alleges that he tried to get the mattress back on July 8, 2008, and on July 16, 2008, his duty status was changed to remove the requirement that he have the special mattress. Plaintiff concludes that the duty status change was made to "cover up" the unlawful actions of those who took the mattress from him. As noted above, Plaintiff told Counselor Lewis about his lawsuit on July 9, 2008, and Lewis then "relayed" that information to the WCC Staff. However, Plaintiff's mattress was "confiscated" prior to that date. Moreover, the suit has still not been served on the defendants. Plaintiff's claim that the mattress was taken in retaliation for filing suit is entirely conclusory.

Plaintiff has not alleged that injunctive relief is necessary in order to prevent a substantial risk of serious injury from ripening into actual harm, Farmer v. Brennan, 511 U.S. 825, 845 (1994), nor is he entitled to monetary damages. His claim is frivolous.

6. Medical Care

Plaintiff presents claims of "malpractice/deliberate indifference" by medical staff at WCC. He alleges the following

facts:

- On 5/23/08, Plaintiff had a biopsy of his prostate gland to check for cancer. Upon return to WCC, he was denied aftercare and medication by Defendants Pacheco, Woods, Fobbs, and Foster.
- On 5/27/08, Plaintiff made an emergency sick call, exhibiting symptoms of "sepsis infection." Defendants Gaskill, Richardson, and Thomas refused to send Plaintiff back to surgeon at hospital. Plaintiff was sent back to the dorm with Tylenol for pain and three days of bed rest.
- On 6/25/08, Plaintiff asked Pacheco for the results of the biopsy, but he refused.

Plaintiff complains that his grievance was denied by Linda Steele, who "violated security by informing Plaintiff of trip to hospital planned in May of 2009." [Doc. #9, p.21]

As noted above, a *serious medical need* is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required. Gobert v. Caldwell, 463 F.3d 339, 345 (5th Cir. 2006), citing Hill v. Dekalb Regional Youth Detention Center, 40 F.3d 1176, 1187 (11th Cir. 1994)(*abrogated on other grounds by* Hope v. Pelzer, 536 U.S. 730 (2002)). A showing of deliberate indifference requires the prisoner to submit evidence that prison officials "'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" Easter v. Powell, 467 F.3d 459, 462 (5th Cir. 2006)(citation omitted). Here, Plaintiff was transported to the hospital for a biopsy, but later denied "aftercare." He has provided no factual allegations

14

of deliberate indifference on the part of the defendants. He has made only a conclusory allegation of "malpractice/deliberate indifference." At best, he has alleged negligence or malpractice, which is insufficient to show an Eighth Amendment violation. See Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991). Plaintiff has not alleged that injunctive relief is necessary in order "to prevent a substantial risk of serious injury from ripening into actual harm." Farmer v. Brennan, 511 U.S. 825, 845 (1994). He has also failed to allege that he would be entitled to monetary damages. His claim is frivolous.

For the foregoing reasons, *and for the reasons set forth in the Report and Recommendation filed in the civil rights case of Michael Sampson, docket number 1:08-CV-915*, it is **RECOMMENDED** that Plaintiff's claims be **DISMISSED as frivolous** under 28 U.S.C. §1915(e)(2)(b).

**Under the provisions of 28 U.S.C. §636(b)(1)(c) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.**

Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this

Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See <u>Douglas v. United Services Automobile Association</u>, 79 F.3d 1415 (5th Cir. 1996).

THUS DONE AND SIGNED in Chambers at Alexandria, Louisiana, this _____ day of _____, 2009.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE